**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEREMY BARATTA, | : | Civil Action No. 10-362 (MLC) |
| Plaintiff, | : | **O P I N I O N** |
| v. | : | |
| COUNTY OF OCEAN, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

JEREMY BARATTA, Plaintiff pro se
P.O. Box 6944, Freehold, New Jersey 07728

**COOPER**, District Judge

Plaintiff, Jeremy Baratta, is a pro se litigant. Based on his affidavit of indigence, the Court will grant his application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the Complaint.

The Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The Court concludes that the Complaint should proceed in part.

### I. BACKGROUND

Baratta brings this civil action against the defendants, County of Ocean; Ocean County Prosecutor's Office; Marlene Lynch Ford, Ocean County Prosecutor; Kristin L. Pressman, Ocean County

Assistant Prosecutor; Deborah S. Hanlon-Schron, Ocean County Assistant Prosecutor; Thomas Kelaher, Mayor of Toms River; Township of Toms River; Toms River Police Department ("Toms River PD"); Michael G. Mastronardy, Chief of Police for Toms River PD; Captain Steven Henry, Toms River PD; Detective Louis A. Santora, Toms River PD; Keith L. Diehl, Steven P. Harrington, Greig F. Errion, Christopher M. Leighton, George C. Fernicola, and John Doe (1-15), who are Toms River PD police officers; Jack Doe (1-5), Toms River PD police dispatchers; Joe Doe (1-10), Toms River Jail employees; Jeff Doe (1-10), Toms River PD employees; James A. Liguori, Toms River Municipal Court presiding judge; Damian G. Murray, Toms River Municipal Court judge; and Jane Doe (1-10), Toms River Municipal Court employees.  (Compl., Caption & Parties.)  The following allegations are from the Complaint, and accepted for purposes of this screening only.  The Court makes no findings as to the veracity of Baratta's allegations.

Baratta alleges that, on or about January 18, 2008, he was seated in his car, which was legally parked on the southbound side of New Hampshire Avenue, eating a sandwich and talking on his cell phone.  Captain Henry approached Baratta's car and parked his police car behind Baratta.  Henry asked Baratta for identification, stating that there had been residential burglaries nearby and Baratta had parked in the "wrong spot." (Compl., ¶¶ 1-2.)

Another police officer arrived, and Baratta was ordered to exit his car and stand to the rear of it.  Baratta alleges that he was further questioned by Henry, leading Baratta to inquire as to the reason he was being detained.  Henry then grabbed Baratta and turned him around so that Henry could "pat down" Baratta.  Henry also reached into Baratta's pockets and inside his pants' waistline to Baratta's objections that Henry's action was a violation of his civil rights and an assault.  (Compl., ¶¶ 3-4.)

Henry told Baratta that he was performing a "Terry" stop.  Baratta continued to object to the stop and search, and "mocked" Henry for being in fear of Baratta.  As Henry proceeded to open the passenger door of Baratta's vehicle, Baratta objected and stated that he would bring legal action against Henry.  Henry returned to Baratta and again grabbed him and searched him, asking Baratta if he had any weapons on him.  (Compl., ¶¶ 5-7.)  Baratta then asked one of the officers present to get his water bottle on the front seat of his car because he had a medical condition that required him to consume large quantities of water.  The officer gave the water bottle to Baratta.  (Compl., ¶ 7.)

Other officers arrived at the scene, and Baratta was put in the rear of a police vehicle.  The officers then stood in a loose perimeter with shotguns.  Baratta continued to ask why he was being detained.  Henry returned to Baratta and informed him that nothing was found in the search of his car.  Henry then asked for

Baratta's consent to search the trunk.  Baratta agreed to the search if the police would allow him to leave in the event nothing was found.  Baratta was then told that he must sign a consent form for the search.  He objected, but then signed the form, allegedly in fear for his safety, because it was dark, he was surrounded by police officers, and was being held "captive" for some time.  (Compl., ¶¶ 8-10.)

The trunk contained a briefcase, which Henry asked to open, but Baratta refused consent.  Baratta asked to go and defendant Santora stated that he wanted to take Baratta to the police station for more questioning.  Baratta agreed to go so long as he could contact his attorney.  At that point, Santora grabbed Baratta and told him he was under arrest for possession of a weapon, namely, "OC" chemical spray, which had been found in the console of his car.  Baratta was then taken to the police station and placed in a secluded rear cell containing a noose hanging from the bar over the door.  (Compl., ¶¶ 10-12.)

Santora threatened Baratta that his car would be impounded, a warrant was being procured for a search of Baratta's car, and Santora would have a high bail amount set to keep Baratta in jail. Baratta admits that none of these threatened events occurred. Santora later asked Baratta to open the briefcase, and Baratta again refused.  Santora stated that he had obtained a search warrant for weapons, and that if Baratta did not open the

briefcase, Santora would break it open.  At that threat, Baratta opened the briefcase.  A handgun, several magazines and a bulk of paper currency was found.  The money was returned to Baratta, and Santora left with the briefcase.  (Compl., ¶¶ 13, 15.)

While at the police station, Baratta asked for water and medicine, as well as the chance to call his attorney.  These requests allegedly were refused.  But when one of Baratta's relatives called the police station, Baratta was permitted to speak with him.  The police also allowed Baratta a phone call to his attorney, but it was late and his attorney was not available.  (Compl., ¶¶ 14, 16-17.)

Baratta was eventually "processed", and given a summons charging him with trespassing and possession of a weapon.  The police returned Baratta to his car, after he had been held for eleven hours.  (Compl., ¶ 18.)

On or about January 22, 2008, Baratta received a call from a relative advising Baratta that a warrant had been issued by the Toms River Municipal Court for Baratta's arrest.  Baratta contacted the court and was eventually provided with information that a warrant had been issued charging him with unlawful possession of a handgun.  Baratta contacted his attorney and they appeared in Municipal Court.  (Compl., ¶ 19.)

Judge Murray reached Baratta's case last.  Baratta's counsel sought a bail reduction, which had been set at $10,000 with no

10% option.  The judge declined.  Baratta contends that the New Jersey Bail Schedule allows the 10% option for the offense charged.  He alleges that he could not post bail with the Municipal Court, but had to be taken back to jail where he posted bail for his release.  Baratta states that he did not receive any water, food or medicine while he was held in custody.  (Compl., ¶¶ 20-21.)

Baratta next alleges that a "track flier" was published about him, which contained personal, non-public information, his photo, and other information that was defamatory.  He does not state where or to whom the track flier was disseminated but alleges that the flier was an effort to "smear" his reputation.  The Complaint also does not identify the defendants who allegedly prepared and disseminated the flier.  Baratta states, however, that he filed a New Jersey Notice of Tort Claim against "defendants", for $5 million in damages.  (Compl., ¶¶ 22, 23.)

Soon after filing his tort claim, a Grand Jury indicted Baratta for unlawful possession of a weapon (a handgun) and trespassing.  Baratta's counsel moved to suppress the State's evidence.  The State moved to dismiss the charge of unlawful possession of a weapon, which was granted.

Baratta now asserts these claims: Count One, deprivation of rights under color of law in violation of 18 U.S.C. § 242; Count Two, engaging in illegal police pattern and practice conduct in violation of 42 U.S.C. § 14141; Count Three, violation of the

Americans with Disabilities Act, 42 U.S.C. § 12101; Count Four, conspiracy to violate civil rights in violation of 42 U.S.C. § 1983; Count Five, violation of his First Amendment rights; Count Six, violation of his Second Amendment rights; Count Seven, violation of his Fourth Amendment right to be free from unlawful search and seizure; Count Eight, violation of his Fifth Amendment right against self incrimination; Count Nine, violation of his Miranda rights and Sixth Amendment right to have counsel present during questioning; Count Ten, violation of his Eighth Amendment right to be free from cruel and unusual punishment; Count Eleven, violation of his right to be free from unlawful search and seizure as protected under the New Jersey Constitution, Article I, Paragraph 7; Count Twelve, violation of the New Jersey Civil Rights Act; Counts Thirteen through Twenty-Eight, asserting common law tort claims of invasion of privacy, assault and battery, unlawful detention, false arrest and imprisonment, use of excessive force, malicious prosecution, abuse of process, defamation, criminal mischief, theft, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, failure to train, failure to supervise, and civil conspiracy.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action in which a litigant is proceeding in forma pauperis,

to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

The Court, in determining the sufficiency of a pro se complaint, must construe it liberally in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But the Court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), revised the standard for summary dismissal of a Complaint that fails to state a claim.  The issue therein was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding his treatment during detention which, if true, violated his constitutional rights.  Id.  The

8

Court examined Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1] Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50 (citations omitted).

The Court further explained that

> a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

>   entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

To prevent summary dismissal, civil complaints must allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  Iqbal emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible. Id. at 1949-50; see Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Iqbal thus provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  A district court must now conduct the two-part analysis set forth in Iqbal:

>   First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

> the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211. But even after Iqbal, the sufficiency of a pro se pleading must be construed liberally in a plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.   ANALYSIS

#### A.   Judicial Immunity

A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireless v. Waco, 502 U.S. 9, 12 (1991). This immunity extends to judges of courts of limited jurisdiction, such as New Jersey municipal court judges. Figueroa v. Blackburn, 208 F.3d 435, 441-43 (3d Cir. 2000). Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Judicial immunity serves an important function in that it furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547 (1967). Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Mireless, 502 U.S. at 11.

There are two circumstances where a judge's immunity from civil liability may be overcome. The exceptions to the judicial immunity doctrine are narrow in scope and infrequently applied.

The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Id.; see Figueroa, 208 F.3d at 440. The second exception involves actions that, though judicial in nature, are taken in the complete absence of jurisdiction. Mireless, 502 U.S. at 11; Figueroa, 208 F.3d at 440. Neither exception is applicable here.

Baratta's claims against Judge Murray involve the setting of bail, which is an act taken in the judge's judicial capacity. Moreover, Baratta alleges no set of facts to support a claim against Judge Liguori. The Complaint thus fails to state a claim against those defendants. Iqbal, 129 S.Ct. at 1949-50. The Complaint will be dismissed as to Judge Murray and Judge Liguori.

**B.  Prosecutorial Immunity**

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

But a prosecutor is not entitled to absolute immunity for actions undertaken in some other function. See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as complaining witness rather than prosecutorial advocate for state); Burns, 500 U.S. at 492-96 (provision of legal advice to police during pretrial investigation is protected only by qualified immunity); Buckley, 409 U.S. at 276-78 (prosecutor not acting as advocate, and not entitled to absolute immunity, when holding press conference or fabricating evidence); see also Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006) (presenting analysis of when prosecuting attorney is entitled to absolute immunity for allegedly wrongful acts related to prosecution; holding, for example, that prosecutor not entitled to absolute immunity for deliberately destroying exculpatory evidence, but entitled to immunity for deciding to deliberately withhold exculpatory evidence before and during trial, but not after conclusion of adversarial proceedings).

Baratta fails to allege any facts as to the prosecutor defendants, County of Ocean, Ocean County Prosecutor's Office, Prosecutor Ford, and Assistant Prosecutor Pressman. Accordingly, the claims against these defendants must be dismissed for failure to state a claim. Also, the only allegation against Assistant

13

Prosecutor Hanlon-Schrom is her motion to dismiss the charge of unlawful possession of a handgun. Such action falls within the scope of prosecutorial duties in initiating and pursuing a criminal prosecution. Here, the prosecutor determined which criminal charges to pursue, which is an essential part of her duties in prosecuting a criminal case. Ultimately, her action in moving to dismiss one charge worked to Baratta's benefit. Thus, there are no allegations that appear to fall outside the scope of the defendants' prosecutorial role, and the Court does not find an allegation of wrongdoing or prosecutorial misconduct of any kind.

To the extent that Baratta may be alleging a claim of conspiracy by the prosecutor defendants, the Complaint consists of nothing more than threadbare, conclusory statements that fail to satisfy the pleading requirements under Rule 8. See Iqbal, 129 S.Ct. at 1949-50. Such a claim must be dismissed for failure to state a cognizable claim under § 1983.

Therefore, the claims against the prosecutor defendants, Ocean County, Ocean County Prosecutor's Office, Prosecutor Ford, and Assistant Prosecutors Pressman and Hanlon-Schrom, will be dismissed for failure to state a claim.

### C. The Remaining Federal Claims

The Court finds that the Complaint fails to allege facts sufficient to support the following claims, and that such claims rest solely on threadbare allegations and conclusory statements that fail to satisfy the pleading requirements under Rule 8:

Count Two, engaging in illegal police pattern and practice conduct in violation of 42 U.S.C. § 14141; Count Three, violation of the Americans with Disabilities Act, 42 U.S.C. § 12101;[2] Count Four, conspiracy to violate civil rights in violation of 42 U.S.C. § 1983; Count Five, violation of the First Amendment; Count Six, violation of the Second Amendment; Count Eight, violation of his Fifth Amendment right against self incrimination; Count Nine, violation of his Miranda rights and his Sixth Amendment right to have counsel present during questioning; and Count Ten, violation of his Eighth Amendment right to be free from cruel and unusual punishment.[3]

This Court also finds that the claim under 18 U.S.C. § 242 is not actionable here.  Statutes, such as 18 U.S.C. § 242, establishing criminal liability for deprivations of civil rights do not give rise to a civil cause of action.  See Figueroa v. Clark, 810 F.Supp. 613, 615 (E.D. Pa. 1992); U.S. v. City of

---

[2] Baratta does not identify or describe the disability that would qualify him for protection under the Americans with Disabilities Act.

[3] The component of the Eighth Amendment governing cruel and unusual punishment applies to convicted prisoners, and Baratta here has not been convicted and was not convicted prisoner during the alleged wrongdoing (failure to provide water, food and medicine) by the defendants Joe Doe (1-10), jail employees and Jeff Doe (1-10) police employees.  Moreover, Baratta was held in custody for less than 24 hours, and he alleges no injuries or other harm from the alleged failure to provide him with water and food.  Accordingly, the claims against the Joe and Jeff Doe defendants will be dismissed based on Baratta's failure to state a cognizable claim for relief.

Philadelphia,, 482 F.Supp. 1248 (E.D. Pa. 1979), aff'd, 644 F.2d 187 (3d Cir. 1980).  Therefore, this claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

But this Court will allow the remaining federal claim alleging a violation of plaintiff's Fourth Amendment right against unlawful search and seizure to proceed at this time.

**D.    State Law and Common Law Claims**

The Court also will allow plaintiff's claims under the New Jersey Constitution, Article I, ¶ 7 (Count Eleven), New Jersey Civil Rights Act (Count Twelve), and his common law tort claims of unlawful invasion of privacy (Count Thirteen), and unlawful detention, false arrest and imprisonment (Count Sixteen), to proceed at this time because they appear to relate to Baratta's Fourth Amendment claims of unlawful search and seizure, and false arrest and imprisonment.

The Complaint also appears to allege facts that may support his common law tort claims of assault and battery (Count Fifteen), use of excessive force (Count Seventeen), malicious prosecution (Count Eighteen), and abuse of process (Count Nineteen).[4]  These claims may proceed at this time against Captain Henry, Detective Santora, and John Doe officers (1-15), and Toms River Police Department and Township of Toms River.

---

[4]    The malicious prosecution claim is directed against the police defendants and relates to the charge for unlawful possession of a handgun, which was dismissed.

16

But the Complaint will be dismissed as against defendants Diehl, Harrington, Errion, Leighton and Fernicola, because the Complaint fails to allege any facts of wrongdoing or civil rights violations as to them.  The Complaint also fails to allege any claims of wrongdoing as to defendants Jack Doe (1-5) police dispatchers and Jane Doe (1-10) municipal court employees, and accordingly, the claims against these defendants will be dismissed.  To the extent plaintiff may be alleging claims of conspiracy as to these defendants, such pleading fails to meet the standard under Iqbal, and Count Twenty-Eight (common law tort claim of civil conspiracy) will be dismissed accordingly.

The common law tort claims, namely, invasion of privacy as it relates to the claim of defamation (Count Fourteen), defamation (Count Twenty), criminal mischief (Count Twenty One), theft (Count Twenty-Two), and intentional and negligent infliction of emotional distress (Counts Twenty-Three and Twenty-Four), also must be dismissed because the Complaint fails to allege facts sufficient to support such claims.

The Complaint asserts claims against defendants Mayor Kelaher and Chief of Police Mastronardy based on supervisor liability that must be dismissed.  Government officials generally may not be held liable for the unconstitutional conduct of subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at 1948; Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691

(1978) (finding no vicarious liability for municipal "person" under 42 U.S.C. § 1983).  The Supreme Court holds that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[5] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.  Thus, a government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in a subordinate's conduct.  Id. at 1949.

There are no allegations here of any wrongful conduct as to defendants Kelaher and Mastronardy, other than that they were supervisors over the police officer defendants.  Accordingly, any § 1983 claim must be dismissed as against these defendants.

The common law claims asserting negligent hiring, failure to train and failure to supervise (Counts Twenty-Five, Twenty-Six and Twenty-Seven) also must be dismissed because Baratta alleges only mere conclusory statements of liability with no factual support to meet the pleading threshold as set forth in Iqbal, 129 S.Ct. at 1949-50.

---

[5]   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

## IV. CONCLUSION

Counts One through Six, Counts Eight through Ten, Count Fourteen, and Counts Twenty through Twenty Eight will be dismissed. The remaining Counts will be allowed to proceed at this time as against defendants Township of Toms River, Toms River Police Department, Captain Henry, Detective Santora, and John Doe officers (1-15). Further, the Complaint will be dismissed as to defendants County of Ocean, Ocean County Prosecutor's Office, Prosecutor Ford, Assistant Prosecutors Pressman and Hanlon-Schrom, Mayor Kelaher, Chief of Police Mastronardy, Judge Liguori, and Judge Murray, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii). The Complaint also will be dismissed as to defendants Officer Diehl, Officer Harrington, Officer Errion, Officer Leighton, Officer Fernicola, Jack Doe (1-5), Joe Doe (1-10), Jeff Doe (1-10) and Jane Doe (1-10). The Court will issue an appropriate order and judgment.

                                              s/ Mary L. Cooper
                                              **MARY L. COOPER**
                                              United States District Judge

Dated:   November 22, 2010